# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 4:05-CR-360-RDP-RRA |
| } | |
| ROBERT SCOTT KELLETT, } | |
| JOSEPH DEWAYNE CAGLE, } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motions to Suppress (Docs. #22 and #32). The court has conducted a hearing on the motions and the parties have briefed the issues in this case. For the reasons stated below, the motions are due to be granted in part and denied in part.

**I.   FACTS**

On October 23, 2004, Defendant Robert Scott Kellett ("Kellett") was involved in a motorcycle accident in which he was injured. Alabama State Trooper Kevin Pierce ("Trooper Pierce") responded to the accident. DeKalb County Sheriff's Deputy Brad Edmondson ("Deputy Edmondson") also arrived at the scene.

When Trooper Pierce arrived at the scene, he learned from a witness that Defendant Joseph Dewayne Cagle ("Cagle") had received from Kellett (and secured) the saddlebag that had previously been harnessed to Kellett's motorcycle. The witness at the scene also informed Trooper Pierce that Cagle and Kellett were talking, and Kellett told Cagle to put the saddlebag into his truck. Trooper Pierce was suspicious of that behavior and, after receiving the information, he approached Kellett while he was in the back of an ambulance and questioned him about the saddlebag. Kellett admitted

that Cagle had taken the saddlebag. At first he stated that he did not know what was in the saddlebag. Upon further inquiry, however, Kellett later stated that he thought there were tools for his motorcycle in the saddlebag. Trooper Pierce testified that Kellett was initially calm and relaxed when he was questioned about the saddlebag. However, when Trooper Pierce re-questioned him, Kellett "started getting a little nervous." (Tr. 6)

After speaking with Kellett, Trooper Pierce and Deputy Edmondson approached Cagle. Cagle was one of a number of people present at the scene. When questioned, Cagle admitted that he removed the saddlebag from Kellett's motorcycle. When he was asked where the saddlebag was, Cagle opened the driver's side door to his pickup truck. Cagle moved the driver's seat backward and forward two or three times. Although Trooper Pierce testified that the saddlebag was in plain view, Cagle appeared to act as if he could not find it. The saddlebag was finally removed from the vehicle. There is a dispute in the testimony concerning whether Cagle or Trooper Pierce removed the saddlebag from the pickup truck. Trooper Pierce testified that "Cagle finally reached behind the seat and handed me the saddlebag." (Tr. 7) Cagle testified that he did not hand the saddlebag to Trooper Pierce, and that it was Trooper Pierce who removed it from the pickup truck. (Tr. 90-91)

It is undisputed that Trooper Pierce opened the saddlebag and found a Smith & Wesson 9mm pistol. After discovering the weapon, Cagle was asked if he had anything on him. Cagle responded that he did not know. What occurred next is the subject of another dispute in testimony. Trooper Pierce testified that Deputy Edmondson asked Cagle if he could search him and Cagle raised his hands in the air implicitly giving permission for such a search. (Tr. 9) Deputy Edmondson testified even before the weapon was discovered, he noticed a bulge in Cagle's right front pocket. Therefore, when the gun was found in the saddlebag, Deputy Edmondson asked Cagle if he could search his

2

person and his vehicle. According to Deputy Edmondson, Cagle raised his hands and said, "No, I don't." (Tr. 54) Not surprisingly, Cagle testified that he never gave consent for any search of himself or his vehicle. (Tr. 84) Indeed, Cagle contends that no search occurred until after he was arrested and handcuffed. (Tr. 84)

It is undisputed that when Deputy Edmondson performed a pat-down on Cagle, he found and removed from Cagle's right front pocket a zip-locked, plastic bag which contained a white material that appeared to be a controlled substance. Other evidence of illegal possession of drugs was found when he was searched. After Cagle was handcuffed and placed in custody, a search of his vehicle was performed. Law enforcement officers found more drugs and drug paraphernalia.

Trooper Pierce testified that he believed the information he received from the witness gave him grounds to search the person of Cagle. Deputy Edmondson testified that he was concerned that the bulge in Cagle's pocket was a weapon. Trooper Pierce testified that his view of the bulge suggested the possibility that it was a weapon, but he could not tell for a fact what it was.

Cagle and Kellett contend that the warrantless search of the saddlebag was performed without consent and violated their Fourth Amendment rights. The court agrees, but only in part.

**II.   DISCUSSION**

"Time and again, [the Supreme] Court has observed that searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). When a warrantless search or seizure is conducted, the burden shifts to the Government to justify the warrantless search. *U.S. v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). "The Fourth Amendment provides that the right of the

3

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.... A traveler's personal luggage is clearly an effect protected by the Amendment." *Bond v. United States*, 529 U.S. 334, 336 (2000).

### **Cagle Did Not Consent to the Search of the Saddlebag**

Based upon the evidence at the hearing, the court finds Trooper Pierce lacked probable cause to search the saddlebag.[1] Therefore, whether his search was proper depends upon whether there was consent given to search the saddlebag. Whether an individual's consent to a warrantless search was given voluntarily is a question of fact that must be decided in light of the totality of the circumstances. *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001). The government bears the burden of proving that consent was given freely and voluntarily. *Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. Tovar-Rico*, 61 F.3d 1529, 1535 (11th Cir. 1995). The failure to object to a search does not amount to consent to the search. *United States v. Gonzalez*, 71 F.3d 819, 829-30 (11th Cir. 1996). The scope of a consensual search is determined by the terms of the actual consent. *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992); *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990); *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). Although the court credits Trooper Pierce's testimony that Cagle removed the saddlebag from behind the seat of his pickup truck and handed it to Trooper Pierce, the court still cannot find that there was proper consent given for Trooper Pierce to search the saddlebag. As Pierce testified:

    Q.    When you confronted Mr. Cagle about the saddlebag, what did you say to him?
    A.    If he had put some saddlebags in the pickup truck.

---

[1] At the hearing, Pierce candidly admitted that he knew of nothing prior to his search of the saddlebag to suggest a crime had occurred or was occurring. Notwithstanding that fact, he made clear in his testimony that he was going to check inside the saddlebag, with or without consent.

> Q. What did he say?
> A. Yes.
> Q. What did you say?
> A. He didn't say anything.
> Q. Did he just go get them for you?
> A. Yes.
> Q. And then when he came back and handed them to you, did he just hand them to you and not say anything?
> A. Yes.
> Q. Did you say anything to him?
> A. I don't remember. I don't think I did.
> Q. Okay. So you never said, Mr. Cagle, may I search those bags?
> A. No.
> Q. You just took it upon yourself to search them?
> A. Yes.
> Q. And you never asked Mr. Kellett if you could search?
> A. No.

(Tr. 44-45).[2]  Nor did Trooper Pierce ask Kellett if he could search the saddlebag. (Tr. 52).

Based on the testimony of Trooper Pierce and the other evidence presented at the hearing, this court must suppress the use of any evidence derived from the search of the saddlebag because there existed no probable cause to justify Trooper Pierce's search and no consent given for that search.

**Cagle Consented to the Search of His Person**

The court credits the testimony of Deputy Edmondson who stated that: (1) after the gun was discovered, he asked Cagle if he had anything on him; (2) Cagle responded that he did not know, and therefore, Deputy Edmondson asked if he could search him; and (3) Cagle gave permission for such a search. In light of the discovery of the weapon in the saddlebag, Deputy Edmondson was justified

---

[2]Based upon this testimony, it is clear that consent was not given by Kellett or Cagle; therefore, the question of whether Cagle, as a third party, had the authority to give consent for the search is moot.

in seeking permission to search Cagle in order to determine whether other weapons were present.[3] It was during this search that Deputy Edmondson discovered something hard and solid in Cagle's right front pocket. The court also credits Deputy Edmondson's testimony that even before the discovery of the gun he was concerned the bulge he observed in Cagle's pocket may have been a weapon and that he was still concerned it may have been a weapon after touching it. It was during this consent to search that Deputy Edmondson discovered the drugs inside Cagle's pocket.

### The Remaining Items That Are the Subject of Defendant's Motion - Other Than the Gun - Were Properly Seized Pursuant to a Search Incident to Arrest

Not surprisingly, Cagle was arrested when the drugs were found in his pocket. The arrest was proper and it follows, therefore, that the remaining evidence that is the subject of the motions (other than the gun) was seized pursuant to a search incident to arrest, *see U.S. v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir. 1986), and/or an inventory search, *see Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992).[4]

### III. CONCLUSION

For the reasons stated above, the court finds Defendants' motions to suppress are due to be granted in part and denied in part. The evidence seized from the saddlebag - i.e., the Smith & Wesson 9mm pistol - is due to be suppressed. In all other respects, the motions are due to be denied.

---

[3] Although Trooper Pierce was not entitled to look into the saddlebag, and the court has suppressed any evidence regarding the discovery of the gun in the saddlebag, the court finds Deputy Edmondson nevertheless acted reasonably after the gun's discovery when he asked Cagle if he had anything on him and if he could search his person. An officer such as Deputy Edmondson cannot simply ignore the risks posed by the discovery of such a weapon, and Deputy Edmondson acted reasonably in seeking to determine if there were other threats to his (and other's) safety.

[4] The court also finds Cagle consented to a search of his truck. This does not salvage the improper seizure of the gun, however, because it was already removed from the saddlebag by Pierce and the court cannot say it would have been inevitably discovered.

An order will be entered in accordance with this memorandum opinion.

    **DONE** and **ORDERED** this   11th   day of January, 2006.

                                                        **R. DAVID PROCTOR**
                                                        UNITED STATES DISTRICT JUDGE